IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CLARA V. R.,[1]

        Plaintiff,

        v.

COMMISSIONER OF SOCIAL
SECURITY ADMINSTRATION,

        Defendant.

Case No. 3:18-cv-00963-JR

OPINION AND ORDER

RUSSO, Magistrate Judge:

    Plaintiff Clara R. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Title II Disability Insurance Benefits. All parties have consented to allow a Magistrate Judge enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is reversed and this case is remanded for further proceedings.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

# BACKGROUND

In February 2015, plaintiff applied for Title II benefits alleging disability beginning March 10, 2014, due to diabetes, high blood pressure, high cholesterol, chronic pain, and hip, knee, and ankle arthritis. Tr. 157-58, 178. Born in 1950, plaintiff was 63 years old as of the alleged onset date. Tr. 157, 174. Plaintiff's application was denied initially and upon reconsideration. Tr. 93-95, 101-03. On May 18, 2017, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert. Tr. 44-71. On July 7, 2017, the ALJ issued a decision finding plaintiff not disabled on or before March 31, 2016, the date last insured. Tr. 28-39. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1-6.

# THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 30. At step two, the ALJ determined the following impairments were medically determinable and severe: "bilateral knee osteoarthritis; ankle osteoarthritis; glaucoma; edema; cellulitis; stasis dermatitis; polyneuropathy; diabetes; obesity; and hypertension." Id. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 31.

Because plaintiff did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff had the residual functional capacity ("RFC") to perform less than the full range of sedentary work:

> [She] could occasionally lift and carry 10 pounds and frequently lift and carry less than 10 pounds. She could sit up to six hours in an eight-hour day and stand and walk two hours total in an eight-hour day. Further, [plaintiff] could push and pull as much as she can lift and carry. She was limited to occasionally climbing ramps,

> stairs, ladders, and scaffolds. Additionally, [plaintiff] was limited to frequent stooping. She was also limited to occasionally kneeling, crouching, and crawling. Due to vision difficulties, [plaintiff] was restricted from hazards, such as working at unprotected heights, working around heavy machinery, and operating a motor vehicle, but was able to avoid ordinary hazards in the workplace. Finally, she was limited to no concentrated exposure to extreme cold conditions and no concentrated exposure to machinery causing vibrations.

Tr. 32.

At step four, the ALJ determined plaintiff was capable of performing her past relevant work as a medical clerk. Tr. 38.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) discrediting her subjective symptom testimony; (2) rejecting the medical opinion of Jane Drummond, M.D.; and (3) failing to find her presumptively disabled at step three under listing 1.02.

### I. Plaintiff's Testimony

Plaintiff asserts the ALJ erred by discrediting her subjective symptom testimony concerning the extent and severity of her impairments. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily

discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, available at 2016 WL 1119029. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

At the hearing, plaintiff testified that she was unable to work due to ankle and knee pain. Tr. 49-50. Plaintiff explained her pain had worsened over the years but she tried to limit her consumption of pain medication, even though it helped ease her symptoms, "because I don't want to become addicted." Tr. 50. She stated that she used a cane to ambulate "[a]ll the time, yeah, indoors and outdoors." Tr. 51. Although she needed surgery in both ankles, she could not go forward with this treatment because of her weight. Tr. 51-52, 55.

In terms of activities, plaintiff testified that she spent the majority of the day – "at least eight hours" – in bed, usually with her feet elevated. Tr. 58-60. She acknowledged doing limited chores in short intervals – a load of laundry, washing "a few dishes," and basic food preparation. Tr. 60. She could drive but often used Trimet LIFT due to pain. Tr. 48-49. Plaintiff testified further that, on a "good day" and "with the cane," she could walk "maybe one block" but she has "more bad days" than good days. Tr. 57-58. Plaintiff explained that she tried to exercise in order to lose weight but is largely unable to, again, due to pain. Tr. 52.

When the ALJ asked plaintiff to clarify notations in the record indicating she was using a stationary bike or exercising one hour per day, five days per week, plaintiff responded:

> I was going to water aerobics, but I could not do water aerobics . . . You know, you have to cross your legs and go frontward, backwards, and things like that. And I couldn't do that [so] I started going on my own [and] walk[ing] in the water, and it has really helped my ankle, the swelling and everything, go down . . . the bicycle, I haven't tried in quite a while, even though I still have it, and I'm hanging onto it, so just in case things get better . . . the last time I was on the bike was probably about a month ago . . . I try to at least go five or ten minutes . . . But lately, I've just been in pain, so I have not been doing that.

Tr. 52-53; see also Tr. 54 (plaintiff reiterating that her exercise consisted of "walking in the water" and "not [using] the bicycle"). Plaintiff recognized that she "should've called [treating Dr. Drummond] and told her I wasn't [exercising] but I didn't." Tr. 55.

After summarizing her hearing testimony, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 33- 36. Specifically, the ALJ found that plaintiff's daily activities and the lack of corroborating medical evidence undermined her subjective symptom statements. Id.

The ALJ addressed plaintiff's allegedly inconsistent daily activities in a single sentence, noting that, despite her allegations at the hearing, plaintiff "drives a car, lives alone, takes the bus, does the laundry, does the dishes, prepares simple meals, and watches television."[2] Tr. 34. An ALJ

---

[2] The Court notes that the ALJ did not cite to any portions of the record in support of this finding, such that it appears as though the ALJ was relying exclusively on plaintiff's hearing testimony. Tr. 34. Accordingly, the ALJ wholly failed to identify "evidence suggest[ing] [plaintiff's] complaints are not credible." Dodrill, 12 F.3d at 918. As a result, the ALJ's rejection of plaintiff's subjective symptom testimony is insufficient, despite the fact that, as discussed herein, other

Page 5 – OPINION AND ORDER

may discredit a claimant's testimony when he or she reports activities of daily living that "are transferable to a work setting" or "contradict claims of a totally debilitating impairment." Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012) (citations omitted). Here, however, substantial evidence does not support the ALJ's finding.

As a preliminary matter, the Court notes the majority of activities relied on by the ALJ are entirely consistent with plaintiff's subjective symptom statements. In other words, the fact that plaintiff lives alone, does minimal chores in short intervals, and watches television while in bed does not contravene her allegations of significant pain and mobility issues related to osteoarthritis in her ankles and knees. Tr. 48-61.

The remainder of the evidence was mischaracterized by the ALJ and therefore also fails to support a negative credibility finding. See Reddick v. Chater, 157 F.3d 715, 722-23 (9th Cir. 1998) (ALJ's "paraphrasing of record material" was "not entirely accurate regarding the content and tone of the record" and did not support an adverse credibility finding). Notably, plaintiff testified that she only drove when her pain levels were manageable and otherwise used Trimet LIFT (a shared-ride service "for people who are unable to use regular buses or trains due to a disability or disabling health condition"), which operates by reservation and comes directly to the authorized participant's home. Tr. 48-49; LIFT Paratransit Service, https://trimet.org/lift/ (last visited April 3, 2019). In sum, the predominantly stationary and intermittent activities cited by the ALJ – i.e., occasional driving, use of Trimet LIFT, completion of limited chores, ability to watch television in bed – are neither transferable to a work setting nor contradict claims of a totally debilitating impairment. See

---

evidence of more robust daily activities, at least during the initial part of the adjudication period, exists.

Page 6 – OPINION AND ORDER

Ellefson v. Colvin, 2016 WL 3769359, *3-4 (D. Or. July 14, 2016) (reversing the ALJ's finding regarding the claimant's daily activities under analogous circumstances).

In addition, the ALJ found that the objective medical evidence did not "provide strong support" for plaintiff's subjective symptom testimony. Tr. 34. "[W]hether the alleged symptoms are consistent with the medical evidence" is a relevant consideration, but "an ALJ cannot reject a claimant's subjective pain or symptom testimony simply because the alleged severity of the pain or symptoms is not supported by objective medical evidence." Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007) (citations omitted). As such, the ALJ may not rely exclusively on the lack of corroborating medical evidence to discount a claimant's testimony where, as here, the ALJ's other reason for finding that testimony not credible is not supported by substantial evidence. See Brown v. Colvin, 2014 WL 6388540, *5-6 (D. Or. Nov. 13, 2014) (reversing the ALJ's credibility finding where the only rationale supported by substantial evidence was inconsistency with the medical record).[3]

In sum, the ALJ committed harmful legal error by failing to provide legally sufficient reasons, supported by substantial evidence, for rejecting plaintiff's subjective symptom statements concerning the extent of her impairments. See Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (only mistakes that are "nonprejudicial to the claimant or irrelevant to

---

[3] The Commissioner asserts the ALJ's treatment of plaintiff's subjective symptom testimony should be upheld because the ALJ "highlighted evidence indicating [plaintiff's] allegedly disabling impairments were relatively well controlled with treatment." Def.'s Resp. Br. 3 (doc. 14). Aside from the fact that the such reasoning does not actually appear in the ALJ's decision, the record is to the contrary. Plaintiff suffers from severe osteoarthritis – indeed, her doctors describer her left ankle as having "bone-on-bone" degeneration – and, as the ALJ acknowledged, her "extreme obesity . . . alone causes significant limitation in her ability" to function. Tr. 36, 466, 666-69, 678. Although plaintiff experienced temporary relief from joint injections, and mild relief from pain medications, she nonetheless continuously reported knee and ankle pain to her medical providers. See, e.g., 54, 227, 238-40, 245, 367-68, 383, 389, 453, 679, 683.

Page 7 – OPINION AND ORDER

the ALJ's ultimate disability conclusion" are harmless). The ALJ's evaluation of plaintiff's testimony is reversed.

## II. Medical Opinion Evidence

Plaintiff argues the ALJ improperly discounted Dr. Drummond's findings. At the time of the ALJ's decision, there were three types of acceptable medical opinions in Social Security cases: those from treating, examining, and non-examining doctors. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. Id.

Plaintiff initiated care with Dr. Drummond in 2013. Tr. 683, 686. During the adjudication period, Dr. Drummond provided treatment to plaintiff every few months for management of her diabetes, high blood pressure, weight, knee and ankle pain, and other intermittent conditions. Tr. 230, 236, 240-41, 245, 255, 374, 383, 567, 608, 624, 637, 640-41, 643.

In May 2017, Dr. Drummond completed a form in support of plaintiff's disability claim. Tr. 683-86. Dr. Drummond identified plaintiff's medical conditions as diabetes, high blood pressure, and chronic pain secondary to degenerative joint disease in her ankle and knees. Tr. 683, 686. In terms of functional abilities, the doctor checked boxes indicating plaintiff could: occasionally lift and/or carry less than ten pounds; stand and/or walk for one minute at a time without her cane and for three minutes at one time with her cane; stand and/or walk for less than two hours total in an eight hour day; sit for one hour at one time; sit for for less than two hours total in an eight hour day; never climb, balance, kneel, crouch, crawl; and occasionally stoop/bend, reach, handle, finger, and feel. Tr. 684-85. Dr. Drummond also indicated plaintiff's concentration

and attention "would be impaired to such a degree that she could not be expected to perform even simple work tasks" 20% of the time. Tr. 685. In the section requesting an explanation for the opined-to limitations, Dr. Drummond wrote: "[plaintiff] is retired and is pretty disabled [secondary to] severe ankle issues." Tr. 686.

The ALJ assigned "little weight" to Dr. Drummond's assessed functional limitations because they were "neither well supported nor consistent with the medical evidence of record as a whole."[4] Tr. 37. An ALJ may disregard "the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas, 278 F.3d at 957. Inconsistency with the record is also a proper basis to reject a doctor's opinion. Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008). Similarly, contradiction between a doctor's opinion and his treatment notes constitutes a legally sufficient reason to reject that opinion. Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692-93 (9th Cir. 2009).

Substantial evidence supports the ALJ's rejection of Dr. Drummond's functional limitations. Although plaintiff repeatedly reported knee and, especially, ankle pain to Dr. Drummond, the majority of her treatment was geared towards weight-loss, diabetes, and medication management. Tr. 230, 236, 240-41, 245, 255, 374, 383, 567, 608, 624, 637, 640-41, 643. As such, Dr. Drummond's chart notes largely do not contain objective evidence relating to plaintiff's ankle or her overall functioning and mobility,[5] and instead document plaintiff's

---

[4] The ALJ also denoted Dr. Drummond's opinion was "inconsistent with the opinions of the State agency medical consultants" and that the ultimate "issue of disability is reserved for the Commissioner." Tr. 37. While true, these facts do not constitute stand-alone reasons for rejecting a medical opinion and instead merely change the standard from "clear and convincing" to "specific and legitimate." Karie K. v. Comm'r Soc. Sec., 2018 WL 3613993, *4 (D. Or. July 27, 2018).

[5] In December 2017, Dr. Drummond completed a second form at the request of plaintiff's attorney, in which she stated she had "not assessed [plaintiff's] functional limitations" and therefore could not render an opinion as to plaintiff's functional abilities. Tr. 17-22.

subjective complaints regarding her frustrations with her weight-loss efforts and confusion over diet, medication, etc. Id.

Moreover, as addressed in section I, Dr. Drummond's chart notes (and those of several other providers) contemplate that plaintiff was physically active during the adjudication period, including regular use of her stationary bicycle. Tr. 231, 374, 522-23, 571, 619, 637, 640, 655; see also Tr. 236-37 (plaintiff reporting to Dr. Drummond in October 2014 that "she has been significantly more active" since being off work and was "feeling great," "still taking care of her DHS kids," and "looking into voluntary activities"); Tr. 607 (plaintiff inquiring in April 2016 whether she could start jogging; Dr. Drummond counseled her to "continue with [her] stationary bike" given her "ankle issues"). While plaintiff clarified at the hearing that she was not, in fact, exercising to the degree suggested by her providers' records, she acknowledged that Dr. Drummond was unaware of this fact. Tr. 52-55. Therefore, Dr. Drummond's chart notes, as well as those of plaintiff's other providers, either directly contradict many of Dr. Drummond's assessed functional restrictions or, at a minimum, do not lend support to the degree of attested-to limitation.

Finally, the Court notes that portions of plaintiff's hearing testimony are inconsistent with Dr. Drummond's assessed functional limitations. For example, plaintiff described the ability to stand a few minutes at time in order to wash a few dishes. Tr. 60. In addition, plaintiff detailed going up and down the stairs in her house multiple times per day. Tr. 59-61. The ALJ's assessment of Dr. Drummond's functional limitations is upheld.

## III. Step Three

Plaintiff asserts the ALJ did not sufficiently discuss whether she met or equaled the listing for major dysfunction of joints – i.e., Listing 1.02 – given that both Drs. Drummond and Workman (plaintiff's treating orthopedist) opined she was unable to ambulate effectively. At step three, the

ALJ determines whether the claimant's medically determinable, severe conditions meet or equal a listed impairment. 20 C.F.R. § 416.920(a)(4)(iii). The ALJ must consider the relevant evidence to determine whether a claimant's impairment meets or equals a listing. Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001). While the ALJ need not make formal "findings" at step three, boilerplate language "is insufficient to support a conclusion that a claimant's impairment does not [meet or equal a listing]." Id. at 512-13.

Listing 1.02 has five criteria: "(1) gross anatomical deformity, (2) chronic joint pain and stiffness with signs of limited motion in the affected joint(s), (3) findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankyloses in the affected joint(s), and (4) involvement of one major peripheral weight-bearing joint (*i.e.* hip, knee, or ankle) that (5) results in an inability to ambulate effectively." 20 C.F.R. Pt. 404, Subpt. P, Appx. 1, Listing 1.02. Inability to ambulate effectively is defined as follows:

> (1) Definition. Inability to ambulate effectively means **an extreme limitation of the ability to walk**; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)
>
> (2) To ambulate effectively, individuals must be **capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living**. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Pt. 404, Subpt. P, Appx. 1, Listing 1.00(B)(2)(b) (emphasis added).

At step three, the ALJ expressly discussed Listing 1.02 but found that plaintiff was not presumptively disabled because "the evidence does not demonstrate that [she] has the degree of difficulty in ambulating as defined in 1.00B2b." Tr. 31. Thus, in evaluating Listing 1.02, the ALJ did not analyze any evidence and instead merely concluded that step three was unmet.

This finding was error given the record before the Court. Both Drs. Drummond and Workman completed forms indicating that plaintiff satisfied Listing 1.02. Tr. 680, 684. The ALJ wholly ignored this evidence at step three, as well as other evidence in the record evincing that plaintiff ambulated with a cane, used a scooter while grocery shopping, and otherwise had problems with mobility. See, e.g., Tr. 57-58, 175, 238-39; Lewis, 236 F.3d at 512; see also Sara L. v. Comm'r of Soc. Sec., 2019 WL 149548, *3-4 (D. Or. Jan. 8, 2019) (examining doctor's opinion that "a claimant's impairments satisfy the requirements of a listing is undoubtedly relevant evidence" that the ALJ must explicitly discuss at step three, even if that same opinion is considered elsewhere in the decision). The ALJ's step three finding is reversed.

## IV. Remand

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1101-02 (9th Cir. 2014). Nevertheless, a remand for an award of benefits is generally appropriate when: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed, there are no outstanding issues that must be resolved, and further administrative proceedings would not be useful; and (3) after crediting the relevant evidence, "the record, taken as a whole, leaves not the slightest uncertainty" concerning disability.

Id. at 1100-01 (citations omitted); see also Dominguez v. Colvin, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy).

As addressed herein, the ALJ committed harmful legal error by failing to discuss the opinions of Drs. Workman and Drummond at step three, and discrediting plaintiff's subjective symptoms testimony. The record is nonetheless ambiguous regarding the extent of plaintiff's impairments. On the one hand, plaintiff suffers from significant osteoarthritis in her ankles and knees, was 65 years old as of the date last insured, is obese, and all of her treating providers opined that her ability to ambulate was extremely limited. Tr. 680, 684.

On the other hand, the medical evidence from Drs. Workman and Drummond is internally inconsistent. For instance, Dr. Workman checked the box indicating that plaintiff was unable to ambulate effectively, but then refused to offer an opinion regarding plaintiff's functional abilities, including the ability to walk, because she "does not do functional capacity assessments." Tr. 680-81. Similarly, Dr. Drummond completed one form in May 2017 reflecting that plaintiff was severely limited in her ability to stand and walk, and could not ambulate effectively; however, approximately six months later, Dr. Drummond stated she was incapable of rendering an opinion regarding plaintiff's functional abilities. Compare Tr. 683-86, with Tr. 17-22.

Furthermore, as discussed in section II, there is evidence in both Dr. Drummond's and Dr. Workman's chart notes evincing that plaintiff regularly exercised in a manner that was incompatible with their medical opinions. While plaintiff clarified at the hearing that she was no longer using her stationary bike, and had never participated in water aerobics classes, the record nonetheless suggests she was more active in the initial period of alleged disability. Namely, at least throughout early 2015, plaintiff cared for foster children (which entailed increased cooking and driving), exercised at Curves, used her stationary bike, attended choir practices and church, and

could walk "a couple of blocks" before needing to stop and "rest [for] a minute or so." Tr. 74-75, 236-37, 362-63, 366, 368, 374.

In light of these ambiguities in the record, the Court declines to credit plaintiff's testimony or the medical opinions of Drs. Drummond and Workman as true, and instead remands this case for further proceedings. See Hill v. Astrue, 698 F.3d 1153, 1162 (9th Cir. 2012) ("[w]hen an ALJ's denial of benefits is not supported by the record, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation") (citation and internal quotations omitted); see also Sara L., 2019 WL 149548 at *4-5 (remanding for further proceedings where the ALJ ignored relevant medical opinion evidence at step three). Given the nature of plaintiff's impairments and remote date-last insured, use of a medical expert would be helpful in defining the extent of plaintiff's limitations. Accordingly, upon remand, the ALJ must consult a medical expert and, if necessary, reformulate plaintiff's RFC and obtain additional vocational expert testimony.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED and this case is REMANDED for further proceedings.

IT IS SO ORDERED.

DATED this 9th day of April, 2019.

/s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge